**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. _____

**DAVID CRUZ,**

  Plaintiff,

v.

**AMERICAN AIRLINES, INC.,**
a Delaware corporation,

  Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, DAVID CRUZ, sues Defendant, AMERICAN AIRLINES, INC., and alleges:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff DAVID CRUZ is a natural person, sui juris, over the age of eighteen, and a citizen of the State of Florida residing in Miami-Dade County, Florida. Plaintiff is a member in good standing of The Florida Bar.

2. Defendant AMERICAN AIRLINES, INC. ("American") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Fort Worth, Texas. American is therefore a citizen of Delaware and Texas for purposes of 28 U.S.C. § 1332(c)(1).

3. American is a common carrier engaged in the business of transporting members of the public by air for hire. American operates a hub at Miami International Airport in Miami-

**1**

Dade County, Florida, is registered to transact business in Florida, and conducts continuous and systematic business activity within this District.

4.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because this action is between citizens of different States and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.      This Court has personal jurisdiction over American under Fla. Stat. § 48.193(1)(a)(1) and (2), because American operates, conducts, engages in, and carries on a business in this State and committed tortious acts within this State, and under Fla. Stat. § 48.193(2), because American engages in substantial and not isolated activity within this State.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1), because American resides in this District within the meaning of 28 U.S.C. § 1391(c)(2) and (d), and under 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to these claims occurred in this District, including the boarding, seating, provisioning, and departure of the subject flight from Miami International Airport.

7.      Venue is properly laid in the Miami Division under S.D. Fla. L.R. 3.1.

8.      All conditions precedent to the bringing of this action have occurred, have been performed, or have been waived.

9.      The passenger who assaulted Plaintiff, identified in this Complaint by his assigned seat as "the 17A passenger," has not been identified to Plaintiff. American declined to identify him and permitted him to leave the aircraft without being detained or identified. Plaintiff expressly reserves the right to amend this Complaint to name that individual as a defendant upon his identification through discovery or through the pending federal investigation. The limitations periods governing Plaintiff's claims against that individual have not expired.

## GENERAL ALLEGATIONS

### A. Flight 2290 and Plaintiff's status as a passenger.

10. On Tuesday, September 30, 2025, Plaintiff was a ticketed passenger aboard American Airlines Flight 2290 from Miami International Airport (MIA) to Los Angeles International Airport (LAX), traveling under confirmation code LCBTRC and assigned seat 17B.

11. Flight 2290 was scheduled to board at Gate D42, Terminal D, at 7:37 p.m. Eastern and to depart at 8:17 p.m. Eastern.

12. Plaintiff traveled on a non-revenue travel privilege, designated "D2," derived from the employment of his mother, Flor A. Cruz, who is employed by American as a Quality Control Inspector at the MIA hangar. At all times material, Plaintiff was a passenger lawfully aboard American's aircraft, to whom American owed the duties of a common carrier.

13. Plaintiff spent the day of September 30, 2025 performing repairs at his mother's residence in Miami Springs, Florida, before being dropped at the terminal. Plaintiff consumed no alcohol at any time before boarding Flight 2290.

### B. American knew the 17A passenger was intoxicated and had already been involved in an altercation before it seated him beside Plaintiff.

14. During the flight, the passenger who came to occupy seat 17A was visibly intoxicated and behaved in a belligerent manner.

15. Before he was moved to seat 17A, that passenger was involved in an altercation with another passenger seated in the exit row.

16. American's cabin crew observed, or was made aware of, that altercation.

VINDEX PRIVATUS, PLLC • 2525 PONCE DE LEON BLVD, SUITE 300 • CORAL GABLES, FL 33134

17.     Rather than restrain the passenger, secure him, seat him apart from other passengers, alert the flight deck, prepare an incident report, request law enforcement to meet the aircraft, or take any other measure available to a cabin crew confronted with a disruptive and intoxicated passenger, American's crew relocated that passenger to seat 17A — immediately beside Plaintiff.

18.     At the time American made that decision, American knew, or in the exercise of the high degree of care owed by a common carrier to its passengers should have known, that the 17A passenger was intoxicated, that he had already been involved in an altercation with another passenger aboard the same flight, and that he presented a foreseeable and continuing risk of harm to any passenger seated beside him.

19.     Federal regulation prohibits a certificate holder from allowing any person who appears to be intoxicated to board its aircraft, and prohibits the service of alcoholic beverages to any person who appears to be intoxicated. See 14 C.F.R. § 121.575. These regulations reflect the standard of care applicable to an air carrier confronted with an intoxicated passenger.

20.     Upon information and belief, American served, or permitted to be served, alcoholic beverages to the 17A passenger at a time when he appeared to be intoxicated.

### C.  The assault, and American's refusal to respond to it.

21.     After American seated the 17A passenger beside Plaintiff, that passenger struck Plaintiff with his elbow in the upper left arm and ribs. He did so on three separate occasions during the flight.

22.     The 17A passenger also threw a bottle of wine onto Plaintiff, saturating Plaintiff's clothing, his bag, and his documents.

23. The 17A passenger also struck or knocked over a beverage that Plaintiff had purchased aboard the aircraft, before Plaintiff was able to consume it. Plaintiff consumed no alcohol at any time aboard Flight 2290.

24. Plaintiff requested assistance from American's cabin crew on multiple separate occasions during the flight: after the first elbow strike, after the second elbow strike, and again after the bottle of wine was thrown onto him.

25. No member of American's cabin crew intervened. No crew member separated the two passengers, reseated Plaintiff, restrained or warned the assailant, prepared an incident report, notified the flight deck, or took any other protective action whatsoever on Plaintiff's behalf.

26. Plaintiff, receiving no assistance from the crew and remaining seated beside his assailant for the balance of a transcontinental flight, began recording audio and video in order to protect himself. Those recordings exist and are preserved.

### D. After landing, American's crew interrogated, mocked, and threatened the victim, and allowed the assailant to walk away.

27. Upon arrival at LAX, and while Plaintiff was still aboard the aircraft, a female flight attendant employed by American confronted Plaintiff in a hostile, aggressive, and sustained manner, refusing to allow him to speak.

28. The flight attendant repeatedly and loudly demanded to know where Plaintiff worked, accused him of lying, and insisted that he was an American Airlines employee, stating in substance: "TELL ME THE TRUTH! WHERE DO YOU WORK? YOU ARE A D2, DON'T LIE — YOU ARE LYING TO ME! YOU WORK IN MIAMI, RIGHT? WHERE DO YOU WORK?"

29. Plaintiff answered calmly that he did not work for American Airlines and that he was an attorney.

30. The flight attendant responded with open ridicule, stating in substance: "OH YEAH! YOU ARE AN ATTORNEY, BUT YOU FLY D2? HAHAHA, YOU ARE LYING, JUST TELL THE TRUTH, WHERE DO YOU WORK, YOU WORK FOR AMERICAN, YOU WORK FOR AMERICAN! YOU ARE A D2!"

31. The flight attendant then threatened Plaintiff with the loss of his travel privileges, stating in substance: "YOU KNOW YOU CAN'T CAUSE PROBLEMS BECAUSE YOU CAN LOSE YOUR FLIGHT BENEFITS, YOU ARE A NON-REV. YOU KNOW THAT, RIGHT?"

32. This confrontation continued at length. It is captured on the audio and video recordings made by Plaintiff.

33. American's crew represented to Plaintiff that law enforcement had been contacted. That representation was false. A member of American's crew subsequently admitted, on Plaintiff's recording, that the crew had not in fact contacted law enforcement.

34. American did not summon law enforcement, did not detain the 17A passenger, did not obtain or preserve his identity, and permitted him to deplane and leave the airport without consequence, while American's crew was occupied interrogating the passenger he had assaulted.

35. When Plaintiff asked American's gate agent whether police were en route and whether the crew could be asked to wait, the gate agent responded in substance: "I'm sorry, but they don't think anything bad happened, so they can go."

36. At all times material, American's flight attendants, gate agents, and other personnel described in this Complaint were acting within the course and scope of their

employment with American and in furtherance of American's business, such that American is vicariously liable for their acts and omissions.

### E. Plaintiff's injuries and the federal investigation.

37.     Later that same night, Plaintiff presented to an emergency care facility, where bruising to his upper left arm and ribs was examined and documented.

38.     That same night, the Federal Bureau of Investigation contacted Plaintiff and took his statement. Two special agents of the Federal Bureau of Investigation have been involved in the matter and have been furnished with Plaintiff's recordings.

39.     On October 6, 2025, a man who identified himself only as being "with security," calling from a blocked number, telephoned Plaintiff, repeatedly cut him off as he attempted to give a statement, called him rude, and repeatedly implied that Plaintiff was guilty of "passenger misconduct" in connection with the incident in which he was assaulted. Plaintiff reported that call in writing the same day.

40.     As a direct and proximate result of the conduct described above, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, humiliation, loss of capacity for the enjoyment of life, expense of hospitalization and medical care and treatment, and loss and damage to personal property. These losses are either permanent or continuing in nature, and Plaintiff will suffer such losses in the future.

### F. American's crew then falsely accused Plaintiff of being intoxicated.

41.     Following the flight, American conducted an internal review of the incident.

42.     In the course of that review, members of American's flight crew stated that Plaintiff had been "intoxicated" during Flight 2290.

**7**

43.     That statement was false. Plaintiff consumed no alcohol before boarding Flight 2290, and he was unable to consume the single beverage he purchased aboard the aircraft because the 17A passenger knocked it over. Plaintiff's contemporaneous recordings demonstrate that he was not intoxicated.

44.     American's crew members published that false statement to third persons, including other agents and employees of American charged with investigating the incident, and it was thereafter repeated to Plaintiff's mother's supervisor at American, who questioned her about it.

45.     The false accusation imputes to Plaintiff the commission of a criminal offense and imputes to him conduct, characteristics, and a condition incompatible with the proper exercise of his lawful profession as a licensed attorney.

46.     On October 27, 2025, Flor A. Cruz submitted a written complaint concerning the incident to American's Travel Allegations department, which was acknowledged by American's systems. No representative of American ever contacted Plaintiff concerning the assault.

## COUNT I — NEGLIGENCE (BREACH OF COMMON CARRIER'S DUTY TO PROTECT)

47.     Plaintiff realleges and incorporates by reference paragraphs 1 through 46 above as though fully set forth herein.

48.     As a common carrier, American owed Plaintiff, its passenger, a duty to exercise the highest degree of care consistent with the practical operation of its aircraft for Plaintiff's safety, and a duty to protect Plaintiff from the reasonably foreseeable tortious and criminal acts of fellow passengers.

**8**

49. That duty encompassed the obligations to monitor and regulate the conduct of passengers aboard the aircraft; to refrain from creating or aggravating a danger to a passenger; to intervene when a passenger is being harmed; and to render reasonable assistance to a passenger who requests it.

50. American's duty was triggered and its knowledge established before Plaintiff was ever struck: its crew knew the 17A passenger was intoxicated and knew he had already been involved in an altercation with another passenger aboard the same aircraft.

51. American breached that duty, including by: (a) relocating a known intoxicated and belligerent passenger to the seat immediately beside Plaintiff; (b) serving or permitting the service of alcohol to a passenger who appeared intoxicated; (c) failing to monitor that passenger after the exit-row altercation; (d) failing to respond to Plaintiff's repeated requests for assistance; (e) failing to intervene, separate the passengers, or reseat Plaintiff after the first, second, and third assaults; (f) failing to notify the flight deck or to request that law enforcement meet the aircraft; (g) failing to detain, identify, or preserve the identity of the assailant; (h) falsely representing that law enforcement had been summoned; and (i) failing to train, equip, and supervise its crew to respond to an in-flight assault.

52. Each of these breaches was a direct and proximate cause of the injuries and damages described above. The harm that occurred — an intoxicated and already-combative passenger assaulting the passenger seated next to him — was precisely the harm that made American's conduct negligent.

53. WHEREFORE, Plaintiff DAVID CRUZ demands judgment against Defendant AMERICAN AIRLINES, INC. for compensatory damages in excess of $75,000, exclusive of interest and costs, together with costs of this action, prejudgment interest where allowable by

**9**

law, and such other and further relief as this Court deems just and proper. Plaintiff demands trial by jury on all issues so triable.

## COUNT II — NEGLIGENT TRAINING, SUPERVISION, AND RETENTION

54.     Plaintiff realleges and incorporates by reference paragraphs 1 through 46 above as though fully set forth herein.

55.     American had a duty to exercise reasonable care in the training, supervision, and retention of the flight attendants, gate agents, and other personnel it places in positions of authority over passengers aboard its aircraft, including with respect to the handling of intoxicated and disruptive passengers, the response to a reported in-flight assault, the preservation of an assailant's identity, and the involvement of law enforcement.

56.     American breached that duty. The conduct of its crew — ignoring three separate assaults reported in real time, seating a known intoxicated and combative passenger beside the complaining passenger, releasing the assailant without identification, falsely claiming police had been called, and then subjecting the victim to a hostile interrogation and a threat to his travel privileges — reflects either an absence of adequate training and supervision or a conscious disregard of it.

57.     As a direct and proximate result, Plaintiff suffered the injuries and damages described above.

58.     WHEREFORE, Plaintiff DAVID CRUZ demands judgment against Defendant AMERICAN AIRLINES, INC. for compensatory damages in excess of $75,000, exclusive of interest and costs, together with costs of this action, prejudgment interest where allowable by

VINDEX PRIVATUS, PLLC • 2525 PONCE DE LEON BLVD, SUITE 300 • CORAL GABLES, FL 33134

law, and such other and further relief as this Court deems just and proper. Plaintiff demands trial by jury on all issues so triable.

### COUNT III — DEFAMATION PER SE

59.     Plaintiff realleges and incorporates by reference paragraphs 1 through 46 above as though fully set forth herein.

60.     American, through its employees acting within the course and scope of their employment, published to third persons the false statement that Plaintiff was intoxicated aboard Flight 2290 and that Plaintiff, rather than the 17A passenger, was responsible for passenger misconduct during that flight.

61.     The statements were false when made.

62.     American's employees published the statements with knowledge of their falsity or with reckless disregard for their truth or falsity. The crew had before it Plaintiff's calm and coherent conduct, his repeated contemporaneous reports of being assaulted, the wine saturating his clothing and belongings, and its own knowledge that the 17A passenger — not Plaintiff — was the intoxicated and combative passenger aboard the aircraft.

63.     The statements are defamatory per se. They impute to Plaintiff the commission of a criminal offense, and they impute to Plaintiff conduct, characteristics, and a condition incompatible with the proper exercise of his lawful profession as a licensed attorney, a profession in which sobriety, credibility, and fitness are essential.

64.     Because the statements are defamatory per se, malice and damages are presumed as a matter of law, and Plaintiff is not required to plead or prove special damages.

VINDEX PRIVATUS, PLLC • 2525 PONCE DE LEON BLVD, SUITE 300 • CORAL GABLES, FL 33134

65.   To the extent American asserts any qualified privilege attaching to statements made during an internal investigation, that privilege is defeated. The statements were made with express malice and were motivated not by any legitimate investigative purpose but by the speakers' interest in deflecting responsibility for their own failure to respond to a reported assault, and they were made with knowledge of their falsity or in reckless disregard of the truth.

66.   As a direct and proximate result, Plaintiff has suffered injury to his reputation, humiliation, embarrassment, mental anguish, and damage to his professional standing.

67.   WHEREFORE, Plaintiff DAVID CRUZ demands judgment against Defendant AMERICAN AIRLINES, INC. for compensatory and presumed damages in excess of $75,000, exclusive of interest and costs, together with costs of this action, prejudgment interest where allowable by law, and such other and further relief as this Court deems just and proper. Plaintiff demands trial by jury on all issues so triable.

## COUNT IV — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

68.   Plaintiff realleges and incorporates by reference paragraphs 1 through 46 above as though fully set forth herein.

69.   American, through its flight attendant acting within the course and scope of her employment, engaged in intentional or recklessly indifferent conduct toward Plaintiff immediately after he had been assaulted three times aboard American's aircraft and had been refused all assistance.

70.   That conduct — a prolonged, loud, and hostile interrogation of an assault victim who was refused the opportunity to speak; open mockery of his statement that he is an attorney; repeated accusations that he was lying; and an express threat that he would lose his travel

privileges if he "caused problems" by reporting the assault — was outrageous, and went beyond all bounds of decency tolerated in a civilized community. It was aggravated by American's simultaneous false assurance that police had been called and its release of the assailant during the very period its crew spent interrogating the victim.

71.     American's crew knew or should have known that severe emotional distress would be the likely result, given that Plaintiff had just been physically assaulted, had been ignored throughout the flight, and had reported the assault repeatedly.

72.     As a direct and proximate result, Plaintiff suffered severe emotional distress.

73.     WHEREFORE, Plaintiff DAVID CRUZ demands judgment against Defendant AMERICAN AIRLINES, INC. for compensatory damages in excess of $75,000, exclusive of interest and costs, together with costs of this action, prejudgment interest where allowable by law, and such other and further relief as this Court deems just and proper. Plaintiff demands trial by jury on all issues so triable.

## COUNT V — NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

74.     Plaintiff realleges and incorporates by reference paragraphs 1 through 46 above as though fully set forth herein.

75.     American owed Plaintiff a duty of care as set forth in Count I.

76.     American breached that duty as set forth in Count I, and further by subjecting Plaintiff, through its crew, to the post-flight conduct described above.

77.     Plaintiff sustained a physical impact — three elbow strikes to his upper left arm and ribs, and the throwing of a bottle of wine onto his person — and sustained documented

physical injury arising from that impact. Plaintiff's emotional distress flows from an incident in which he was physically impacted and physically injured.

78.     As a direct and proximate result, Plaintiff suffered mental and emotional distress, anxiety, humiliation, and loss of capacity for the enjoyment of life.

79.     WHEREFORE, Plaintiff DAVID CRUZ demands judgment against Defendant AMERICAN AIRLINES, INC. for compensatory damages in excess of $75,000, exclusive of interest and costs, together with costs of this action, prejudgment interest where allowable by law, and such other and further relief as this Court deems just and proper. Plaintiff demands trial by jury on all issues so triable.

## **RESERVATION OF RIGHT TO SEEK PUNITIVE DAMAGES**

80.     Plaintiff reserves the right to seek leave to assert a claim for punitive damages upon a reasonable showing by evidence in the record or proffered by Plaintiff, in accordance with the governing law and the procedures of this Court.

VINDEX PRIVATUS, PLLC • 2525 PONCE DE LEON BLVD, SUITE 300 • CORAL GABLES, FL 33134

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands trial by jury on all issues so triable as of right, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: _____, 2026.

Respectfully submitted,

**VINDEX PRIVATUS, PLLC**

**By: /s/ David Cruz**
**DAVID CRUZ, ESQ.**
Florida Bar No. 1006812
2525 Ponce de Leon Blvd, Suite 300
Coral Gables, Florida 33134
Telephone: (786) 626-8113
Email: david@vindexprivatus.com
**Counsel for Plaintiff**